**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONYELL PADDY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 03-5312** |
| **JEFFREY BEARD, LOUIS S. FOLINO,** | : | |
| **THE DISTRICT ATTORNEY OF THE** | : | |
| **COUNTY OF PHILADELPHIA, THE** | : | |
| **ATTORNEY GENERAL OF THE STATE** | : | |
| **OF PENNSYLVANIA** | : | |

**NORMA L. SHAPIRO, J.**                                    **NOVEMBER 20, 2012**

## MEMORANDUM

Petitioner Donyell Paddy ("Paddy"), a prisoner serving a life sentence at the State Correctional Institution in Waynesburgh, Pennsylvania, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition was referred to Magistrate Judge Thomas J. Rueter, who filed a Report and Recommendation ("R&R") that the petition be denied without an evidentiary hearing. Paddy timely filed objections. For the reasons stated below, Judge Rueter's R&R will be approved and adopted, Paddy's objections will be overruled, and his petition will be denied.

## BACKGROUND

### I.        Factual and Procedural History

On July 17, 1990, Paddy was arrested for the murder of Wilbur Thomas. Eyewitness Kelvin Smith identified Paddy as the killer from a photo array. The facts developed at trial reveal that drug dealer Stephen Blount ordered Paddy to kill Thomas for interfering with Blount's drug business. *Commonwealth v. Paddy*, No. 1348 Phila. 1995, slip op. at 1 (Pa. Super. Ct. Oct. 28, 1996). Paddy drove a rust-colored Volvo to the scene, exited the car, shot and killed Thomas, and

fled the scene in the Volvo. *Id.* Smith refused to identify Paddy at a preliminary hearing, and all charges against Paddy were dropped. N.T., 9/28/90, at 10-12.

After Smith agreed to testify, Paddy was re-arrested and re-charged with murder and related offenses regarding the same incident. At trial in the Court of Common before the Honorable Juanita K. Stout, Smith and numerous other eyewitnesses identified Paddy as the killer. A jury convicted Paddy for first degree murder and possession of an instrument of crime. Paddy was sentenced to life imprisonment. *Commonwealth v. Paddy*, No. 1348 Phila. 1995, slip op. at 2 (Pa. Super. Ct. Oct. 28, 1996).

Paddy, represented by new counsel, filed a direct appeal. He argued that trial counsel was ineffective for failing to:

1) Request a lineup or move to suppress the identification testimony of witnesses who never participated in a pre-trial identification procedure and who first identified Paddy at trial five years after the incident;

2) Request a mistrial after an outburst by Paddy during trial;

3) Present exculpatory fingerprint evidence from Paddy's Volvo;

4) Cross-examine Smith on the fact that he received an Accelerated Rehabilitative Disposition ("ARD") in exchange for testifying against Paddy;

5) Request a "corrupt source" jury instruction;

6) Object to and eliciting inadmissible hearsay evidence; and

7) Object to an erroneous and harmful jury instruction.

Petr's Direct Appeal Br. at i. He also claimed the trial court erred by: 1) denying his motion for a mistrial based on the prosecutor's effort to inject fear into the trial; and 2) allowing inadmissible

hearsay statements into evidence. *Id.* The Superior Court affirmed Paddy's conviction and

sentence. *Paddy*, No. 1348 Phila. 1995. The Pennsylvania Supreme Court denied Paddy's

application for discretionary review.[1] *Commonwealth v. Paddy*, 692 A.2d 564 (Pa. 1997).

On September 10, 1997, Paddy filed a *pro se* petition for relief under the Pennsylvania

Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541, *et seq.* The PCRA court appointed

new counsel, but appointed counsel was permitted to withdraw after Paddy requested leave to

proceed *pro se.* The court appointed another attorney as backup counsel (Paddy's fourth lawyer),

but this lawyer withdrew because of a conflict of interest. The court appointed another lawyer as

backup counsel (Paddy's fifth lawyer). After Paddy stated in a colloquy that he no longer wished

to represent himself, appointed counsel filed an amended PCRA petition. The court dismissed the

petition. *Commonwealth v. Paddy*, No. 0826, slip op. (C.P. Phila. Mar. 21, 2002).

Paddy, still represented by his fifth lawyer, appealed denial of his PCRA petition. He

argued he was entitled to a new trial because of misconduct by the Commonwealth, including:

    1)  Deliberately failing to disclose exculpatory evidence (specifically, the statements of

---

[1] In his petition for allowance of appeal to the Pennsylvania Supreme Court, Paddy raised the following questions presented:

    1)  Did not the Superior Court err in applying the wrong standard of review and otherwise not remanding for an evidentiary hearing in determining that trial counsel was not ineffective for failing to request a lineup or seek to exclude identification testimony of eyewitnesses who never participated in a pretrial identification procedure and who identified Mr. Paddy in court five years after the incident?

    2)  Did not the Superior Court err in determining that trial counsel was not ineffective for failing to request a mistrial after an outburst by Mr. Paddy, neglecting to present or argue exculpatory fingerprint evidence, failing to request a "corrupt source" jury instruction, eliciting and/or allowing hearsay evidence, and failing to object to an erroneous and harmful jury instruction?

    3)  Did not the Superior Court err in affirming the trial court's denial of Mr. Paddy's motion for a mistrial based on the prosecutor's persistent effort to inject fear and prejudice into the trial?

    4)  Did not the Superior Court err in affirming the trial court's decision to admit inadmissible hearsay testimony that characterized this murder as an ordered "hit"?

Pet. for Allowance of Appeal at i.

Joseph Harris, evidence regarding Marvin Neal's credibility, the status of the

fingerprint evidence, and photographs of Paddy's Volvo);

2)  Knowingly using false and misleading testimony; and

3)  Making deliberate misrepresentations to the court regarding Paddy's direct appeal.

Paddy also argued that trial counsel was ineffective for failing to:

1)  Adequately investigate Commonwealth witnesses Harris, Neal and Shawn Roussaw;

2)  Call mechanic John Beauford to testify regarding Paddy's Volvo; and

3)  Properly review exculpatory fingerprint evidence and photographs of Paddy's Volvo

before the trial and present this evidence at trial.

He added that appellate counsel was ineffective for failing to investigate and raise all aspects of

trial counsel's ineffectiveness on direct appeal. Petr's PCRA Appeal Br. at 5. The Pennsylvania

Superior Court affirmed the dismissal of Paddy's PCRA petition. *Commonwealth v. Paddy*, No.

2533 EDA 2001 (Pa. Super. Ct. Dec. 10, 2002).

Paddy filed a second, *pro se* PCRA petition and a supplemental PCRA petition. He also

filed the instant petition for a writ of habeas corpus. This court issued an order to hold federal

proceedings in abeyance pending disposition of Paddy's second PCRA petition. The action was

placed in administrative suspense.

On June 8, 2004, Paddy, represented by a new set of attorneys, filed an amended PCRA

petition in state court. The PCRA court dismissed the petition after sending a notice of intent to

dismiss because the petition was untimely. The Superior Court affirmed the dismissal.

*Commonwealth v. Paddy*, No. 932 EDA 2005, slip op. at 5 (Pa. Super. Ct. Jan. 22, 2007). Paddy

did not seek review in the Supreme Court. This court removed his action from suspense.

Paddy raises at least twenty grounds for relief in his federal habeas petition. He argues that, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the Commonwealth suppressed material, exculpatory evidence of:

1) The inoperability of his Volvo at the time it was impounded by the police;

2) The police investigation into other potential suspects and fingerprint test results concluding that Paddy's fingerprints were not found on the Volvo that was alleged to have been used in the crime;

3) The prints recovered from the Volvo and the presence of the victim's blood in the car;

4) The statements of witnesses Carrie Irick, Diane Nobles, Louis Butler and Joseph Harris (pursuant to an improper protective order) and the statements of George Whealton;

5) Witness Neal's credibility;

6) Witness Roussaw's credibility; and

7) Blount's statement that he did not conspire with Paddy in the murder of Thomas.

Paddy raises the cumulative effect of these *Brady* errors, and he claims that his trial and appellate counsel were ineffective for failing to investigate the above seven matters.

Paddy also argues that trial counsel was ineffective, in violation of his Sixth and Fourteenth Amendment rights, for failing to:

1) Investigate the inoperability of the Volvo;

2) Request a line-up and litigate a motion to suppress the in-court identification of Paddy by the Commonwealth's secret witnesses and request jury instructions regarding their testimony;

3) Impeach witness Smith with evidence of bias (and ineffectiveness of appellate counsel to the extent that he did not raise this claim fully on appeal);

4) Impeach witness Roussaw;

5) Object to hearsay evidence;

6) Object to the trial court's curative jury instructions;

7) Object to the prosecutor's improper and prejudicial closing argument;

8) Object to the admission of the Roussaw letter into evidence and allowing the Commonwealth to cross examine Richard Streets about the letter's contents; and

9) Investigate, make proper arguments and objections, and raise and/or properly litigate the issues.

Paddy's other claims are that:

1) His due process rights were violated when the Commonwealth presented the false and misleading testimony of Neal and the PCRA court denied a full hearing on this claim based on evidence of Neal's phone call admitting he testified falsely;

2) The state court violated his rights under the Confrontation Clause by admitting inadmissible hearsay evidence;

3) He was denied the right to a fair trial under the Sixth Amendment because of the prosecutor's improper guilt phase closing argument; and

4) Prosecutorial misconduct (including *Brady* violations, use of intimidation evidence, and use of false and misleading testimony regarding the operability of the Volvo) led to violations of Paddy's due process rights and right to a fair trial.

This court referred Paddy's petition to Magistrate Judge Thomas J. Rueter for a R&R.

## II.     Report and Recommendation

Judge Rueter reviewed all of Paddy's claims and recommended that each one be denied and/or dismissed with prejudice. He also recommended there be no evidentiary hearing. Judge Rueter found that Paddy procedurally defaulted most claims, either because Paddy did not properly exhaust the claim in the state courts or because he raised the claim only in his untimely PCRA petition. For the remaining claims, Judge Rueter found that the state courts did not reach a result that was unreasonable or contrary to established law.

## III.     Paddy's Objections

Paddy timely filed objections to the R&R. He objects to most of Judge Rueter's conclusions. Paddy asserts that: 1) all of his claims were properly exhausted; 2) none of his claims are procedurally defaulted; 3) he is entitled to a new trial because the Commonwealth committed numerous *Brady* violations and Paddy's trial and appellate counsel were ineffective; and 4) he is entitled to an evidentiary hearing.

## DISCUSSION

This court must consider Paddy's objections and review *de novo* those portions of the R&R to which he specifically objects. 28 U.S.C. § 636(b)(1)(C).

## I.     Procedurally Defaulted Claims

Judge Rueter found that Paddy procedurally defaulted many of his claims. The procedurally defaulted claims will be analyzed in two categories: 1) those that were not fairly presented in the state courts; and 2) those that were dismissed by the state courts based upon adequate and independent state grounds.

### A. Claims That Were Not Fairly Presented to the State Courts

Paddy's habeas corpus application is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA requires a petitioner in state custody to exhaust all remedies available in the state courts before a federal court can grant his or her habeas petition. 28 U.S.C. § 2254(b)(1). In Pennsylvania, a habeas petitioner exhausts a claim by raising it either on direct appeal or in a petition under the PCRA. *See Castille v. Peoples*, 489 U.S. 346, 351; *Holloway v. Horn*, 355 F.3d 707, 718 (3d Cir. 2004). The petitioner must present the claim to the Pennsylvania Superior Court.

In *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), the United States Supreme Court held that a petitioner must also present his or her claim in a petition for discretionary review to the state supreme court if doing so is an established part of the state's appellate review process. *Id.* at 845. On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 to announce that a petitioner in Pennsylvania need *not* seek discretionary review to exhaust state remedies. The Third Circuit Court of Appeals recognizes the validity of this order, *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004), but has emphasized that it does not apply retroactively, *Wenger v. Frank*, 266 F.3d 218, 225 (3d Cir. 2001).

Order No. 218 is inapplicable to Paddy's claims on direct appeal because the Superior Court affirmed his conviction and sentence on October 28, 1996, well before the Pennsylvania Supreme Court issued the order. Claims raised on direct appeal were exhausted only if Paddy raised them in his petition for allowance of appeal to the Pennsylvania Supreme Court. Order No. 218 *is* applicable to claims raised in Paddy's PCRA petitions because these claims were

adjudicated after May 9, 2000. Claims raised in these petitions were exhausted so long as they were presented to the Superior Court in the appeal of their dismissal.

Two considerations guide this court's analysis of whether Paddy properly presented a claim in the state courts so that the claim is exhausted. First, if the state courts expressly decided a claim, then the petitioner exhausted it. *Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir. 1982). "[I]t must be evident from the state court's opinion alone that it has considered an issue." *Id.* Second, if the state court opinions are silent on the issue, then the habeas court must examine the briefs to determine whether the petitioner raised the claim in the state courts. *Id.* The petitioner must have "fairly presented" the federal claim to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

A petitioner fairly presents a federal claim if he or she raises the claim in a manner that puts the state courts on notice that a federal claim is being asserted. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). The applicant need not cite "book and verse" of the United States Constitution, but the factual and legal substance of the federal claim must be equivalent in substance to the claim raised in the state courts. *Id.* A state court is put on notice that a federal claim is being presented through a petitioner's: (a) reliance on federal cases employing constitutional analysis; (b) reliance on state cases employing constitutional analysis in analogous fact situations; (c) assertion of the claim in terms so particular it calls to mind a specific right protected by the United States Constitution; or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[2] *McCandless*, 172 F.3d at 261; *accord Nara v.*

---

[2] The Commonwealth, citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), argues that "[w]hen a federal law claim has been fairly presented to the state courts, it should be clear from the body of the state court appellate briefs that a federal law claim has been presented; it should not be necessary to read the record or to read decisions cited in the briefs to be able to identify whether a federal claim, as opposed to a state-law claim, is being presented."

*Frank*, 488 F.3d 187, 198 (3d Cir. 2008). It is not sufficient that a petitioner made a "somewhat similar state law claim." *McCandless*, 172 F.3d at 261 (petitioner's prosecutorial misconduct and hearsay claims were not fairly presented because petitioner raised them as state evidentiary challenges rather than violations of federal law); *see also Keller v. Larkins*, 251 F.3d 408, 413-16 (3d Cir. 2001) (due process claim was not fairly presented because it was raised in state court as a matter of state evidentiary law).

A federal trial court generally must dismiss a petition containing unexhausted claims to allow the petitioner to litigate his or her claims in the state courts. *Rose v. Lundy*, 455 U.S. 509 (1982). But when state procedural rules bar the petitioner from obtaining state court review of claims that were not fairly presented, "the exhaustion requirement is satisfied because there is an absence of available State corrective process." *McCandless*, 172 F.3d at 260. "In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default." *Id.*

---

Commonwealth's Resp. to Petr's Objections to R&R at 30-31. The Court of Appeals has already rejected this argument:

> The Commonwealth suggests that Supreme Court's decision in *Baldwin v. Reese* may have limited the viability of the *McCandless* analysis. We disagree. *Baldwin* held that, 'ordinarily a state prisoner does not fairly present a claim to a state court if that court must look beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion, that does so.' *Baldwin* concluded that the petitioner's briefs to the state courts in that case did not 'fairly present' a federal claim because the briefs cited no case that might alert the state court to the federal nature of the claim, lacked a factual description supporting the claim, and yet cited federal law in support of other claims. These are among the same considerations set out in *McCandless*.

*Nara*, 488 F.3d at 198 n.17.

Paddy effectively exhausted all claims not fairly presented to the state courts.[3] State remedies are no longer available to him because these claims would be dismissed by a state court as untimely.[4] *See Coleman*, 501 U.S. at 732. Paddy has also procedurally defaulted these claims; this court must dismiss them unless an exception applies.

### 1. Suppression of Records Showing Inoperability of Paddy's Volvo

Paddy argues that the Commonwealth violated *Brady* by suppressing that records were kept showing the condition of vehicles as they arrived at the police impound lot. He suggests these records would have shown that his Volvo was inoperable when it was impounded. Petr's Objections to R&R at 5-6. Paddy did not raise this issue in the state courts, and the time to raise it has passed. The claim is procedurally defaulted.

### 2. Suppression of Statements of Witnesses Butler, Irick, Nobles and Whealton

Paddy asserts that the Commonwealth withheld the identities and statements of witnesses Irick, Nobles and Butler pursuant to an improper protective order. Petr's Objections to R&R at 53-55. He also claims the Commonwealth withheld statements of witness Whealton, who was not subject to the protective order. *Id.*

On direct appeal, Paddy put forth claims relating to these witnesses. For example, in his brief to the Superior Court, he argued that trial counsel was ineffective for failing to request a lineup or move to exclude the in-court identification testimony of Nobles and Irick. Petr's Direct Appeal Br. at 25. But he never asserted the *Brady* claims relating to Irick, Nobles, Butler or

---

[3] Judge Rueter characterized claims that were not fairly presented to the state courts as "unexhausted." *See, e.g.*, R&R at 21, 35, 40. As described above, these claims are exhausted. This technical point aside, Judge Rueter correctly identified these claims as procedurally defaulted.

[4] A PCRA petition must be filed within one year of the date the judgment becomes final. 42 Pa. C.S. § 9545(b). For Paddy, this period ended on June 23, 1998.

Whealton.[5] Paddy did not fairly present these claims to the state courts, and he cannot do so now. The claims are procedurally defaulted.

### 3. Ineffective Assistance of Counsel ("IAC") for Failure to Cross-Examine Witness Smith

Paddy argues that trial counsel was ineffective for failing to cross-examine Smith with evidence of bias in favor of the Commonwealth. Specifically, trial counsel failed to establish that Smith received an ARD, following his arrest for possessing a stolen vehicle, in exchange for testifying against Paddy. Petr's Objections to R&R at 63-65. Paddy raised this issue on direct appeal to the Pennsylvania Superior Court, and the court concluded that counsel was not ineffective, *Paddy*, No. 1348 Phila. 1995, slip op. at 6.

Paddy did not appeal the Superior Court's decision to the Pennsylvania Supreme Court, so he did not properly exhaust this claim. Since the time to appeal to the Supreme Court has expired, the claim is procedurally defaulted.

### 4. IAC for Failure to Impeach Witness Roussaw

Paddy also claims that trial counsel was ineffective for failing to impeach witness Roussaw with evidence of bias in favor of the Commonwealth and appellate counsel was ineffective for failing to raise this issue on appeal. Petr's Objections to R&R at 67-71. In his petition, and again in his objections, Paddy describes in great detail what investigation was not undertaken by trial counsel and how this investigation would have helped Paddy. *Id.*

Paddy did not fairly present these claims to the state courts. In his first PCRA petition, Paddy argued that trial counsel was ineffective in his handling of Roussaw. Petr's First PCRA

---

[5] When discussing Paddy's ineffective assistance of counsel claim, the Superior Court noted that "[t]he evidence is not exculpatory so there is no *Brady* violation." *Paddy*, No. 1348 Phila. 1995, slip op. at 3. But Paddy did not raise this *Brady* claim to the courts in his briefs, so it was never fairly presented.

Br. at 22-26. But, as the Court of Common Pleas recognized, Paddy did not provide details; for example, he did "not indicate what investigation was not undertaken and how it would have benefitted his cause." *Paddy*, No. 0826, slip op. at 4.

The instant claim is not the substantial equivalent of the claim put forth below because the factual and legal substance of the claim has been broadened. *McCandless*, 172 F.3d at 261. The claim has not been fairly presented in the state courts, and the time to raise it in the state courts has passed. The claim is procedurally defaulted.

### 5. *IAC for Failure to Object to the Commonwealth's Cross-Examination of Witness Streets*

According to Paddy, trial counsel was ineffective for failing to: 1) object to the Commonwealth's cross-examination of witness Streets regarding a letter allegedly written by Roussaw; and 2) request a hearing outside of the presence of the jury to weigh the prejudicial effect of Streets' testimony. The allegedly fabricated letter related to another murder involving Paddy. Petr's Objections to R&R at 77.

Paddy did not fairly present these federal claims to the state courts. On direct appeal, he complained only about trial counsel eliciting hearsay testimony from a detective regarding the Roussaw letter. *Paddy*, No. 1348 Phila. 1995, slip op. at 1. In his PCRA petition, Paddy asserted that trial counsel should have objected to the Commonwealth's cross-examination of Streets and that trial counsel was ineffective for presenting Streets as a witness. Petr's First PCRA Br. at 33-34. The Court of Common Pleas concluded that trial counsel was not ineffective. *Paddy*, No. 0826, slip op. at 4. Paddy did not raise this claim when he appealed the denial of his PCRA

petition to the Pennsylvania Superior Court. *See* Petr's PCRA Appeal Br. He did not properly present the claim, and it is now procedurally defaulted.[6]

Paddy never raised the claim that counsel should have requested a hearing outside of the presence of a jury. This claim is also procedurally defaulted.

### 6. Claims Relating to Inadmissible Hearsay

Paddy states that: 1) trial counsel failed to object to and elicited inadmissible hearsay; 2) the Commonwealth elicited inadmissible hearsay; and 3) the trial court allowed inadmissible hearsay. He argues that the inclusion of this hearsay evidence in his trial violated his rights under the Confrontation Clause. Petr's Objections to R&R at 71-73.

Paddy did not fairly present these claims to the state courts. On direct appeal, he argued that trial counsel should have objected to certain inadmissible hearsay statements. Petr's Direct Appeal Br. at 40. He also argued that the trial court erred in allowing these inadmissible hearsay statements into evidence. *Id.* at 52-54. But he raised these arguments as a matter of state evidentiary law, not federal constitutional law. A similar state law claim does not meet the fair presentation requirement. *See, e.g.*, *McCandless*, 172 F.3d at 261. Even if Paddy meant for "his claim[s] of error [to] encompass[] constitutional error as well," he did not sufficiently put the state courts on notice that he meant to assert federal claims. Petr's Objections to R&R at 73. His time to raise the constitutional arguments in the state courts has passed. These claims are procedurally defaulted.

---

[6] Judge Rueter stated that Paddy never presented this claim to the state courts, R&R at 48, but Paddy did raise it in his first PCRA petition, *see* Petr's First PCRA Br. at 33034. Paddy did not properly exhaust the claim because he did not appeal it to the Superior Court.

### *7. Claims Relating to Prosecutor's Closing Argument*

Paddy contends the Commonwealth presented an improper closing argument at the guilt phase of his trial in violation of his due process rights under the Fourteenth Amendment. Petr's Mem. of Law at 69. He adds that trial and appellate counsel were ineffective for failing to object to the argument in violation of his Sixth Amendment rights. *Id.*

On direct appeal, Paddy claimed the trial court erred in denying his motion for a mistrial based on the prosecutor's effort to inject fear and prejudice into the trial. *See* Petr's Direct Appeal Br. He did not raise the issue of prosecutorial misconduct, nor did he argue that his rights under the Fourteenth or Sixth Amendments were violated. These claims are procedurally defaulted.

### *8. Cumulative Error*

Finally, Paddy argues in his federal habeas petition that the cumulative effect of the Commonwealth's prosecutorial misconduct violated his due process rights and denied him the right to a fair trial. Petr's Mem. of Law at 169. Although Paddy raised many individual claims of *Brady* violations and prosecutorial misconduct in the state courts, he never presented a claim of cumulative error. This claim is procedurally defaulted.

### B. Claims That Were Dismissed by the PCRA Court on Adequate and Independent State Grounds

Several of Paddy's claims were raised only in his untimely second PCRA petition. *Paddy*, No. 932 EDA 2005, slip op. at 3-5. Judge Rueter found that these claims are procedurally defaulted. Paddy contends the state court ruling cannot bar federal merits review because: 1) he did not actually fail to comply with the time requirements of the PCRA, set out at 42 Pa. C.S. § 9545(b); 2) the state court ruling was not adequate; 3) Paddy can demonstrate cause and

prejudice to excuse any default; and 4) he can prove he is actually innocent under the "miscarriage of justice" exception. Petr's Objections to R&R at 31.

This category of claims is properly analyzed under the adequate and independent state ground doctrine.[7] This doctrine "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. A federal court must not review "a question of federal law decided by a state court if the decision of that court rests on a [substantive or procedural] state law ground that is independent of the federal question and adequate to support the judgment." *Id.*

In determining whether a state court ruling provides an adequate and independent basis for precluding federal review, the federal court must consider whether: 1) the state procedural rule speaks in unmistakable terms; 2) all state appellate courts refused to review the petitioner's claim on the merits; and 3) the state court's refusal in this instance is consistent with other decisions. *Doctor*, 96 F.3d at 683-84. The ruling is adequate if it was "firmly established and regularly followed" at the time of the decision. *Beard v. Kindler*, 558 U.S. 53 (2009). The petitioner must have "some sort of notice, at the time of his state court procedural default, of a state procedural rule's potential impact on his case before that rule can be considered adequate." *Holland*, 150 F. Supp. at 721; *Yarris*, 230 F. Supp. 2d 577. The ruling is independent if it does not rest upon federal law. *Harris v. Reed*, 489 U.S. 255, 260-61 (1989). The PCRA time bar is an independent state ground because it does not require state courts to consider federal law in determining the availability of post-conviction review.

---

[7] Judge Rueter did not analyze these claims under the adequate and independent state ground doctrine. He recommended this court dismiss all such claims with prejudice because they were not fairly presented to the state courts (*i.e.*, they fall into the category of claims described above). *See, e.g.*, R&R at 35, 36, 37.

A state court ruling is not adequate to preclude federal review if the petitioner did not actually violate the state procedural rule. *See Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998). If Paddy complied with the time requirements set out in § 9545(b), as he claims, then the state court's decision that his petition was untimely is inadequate. Section 9545(b)(1) provides that any PCRA petition must be filed within one year of the date the judgment became final, unless the petition alleges and the petitioner proves that:

> (i)　the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim . . .
>
> (ii)　the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii)　the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa. C.S. § 9545(b)(1). Any petition invoking one of the above exceptions must be filed within 60 days from the date the claim could have been presented. 42 Pa. C.S. § 9545(b)(2).

Paddy did not comply with § 9545(b). He did not file his PCRA petition by June 23, 1998, one year after his conviction became final; he filed the petition on August 3, 2003, over five years later. Paddy asserts he filed his petition within 60 days of receiving "new affidavits." Petr's Objections to R&R at 31. But he did not properly allege and/or prove to the state court that he was claiming an exception. As the Superior Court stated: "Although appellant makes bald assertions of interference by government officials and after-discovered evidence, he has failed to

properly plead and prove applicability of the time-bar exceptions." *Paddy*, No. 932 EDA 2005, slip op. at 5.

This state procedural rule also was firmly and regularly established when Paddy filed his PCRA petition. Paddy contends that *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007), establishes that Pennsylvania courts did not strictly enforce the PCRA time bar when Paddy filed his petition. Petr's Reply to Resp. at 31-35. In *Bennett*, the Pennsylvania Supreme Court noted that Pennsylvania courts have at times inconsistently applied the § 9545(b)(ii) exception. *Id.* at 393-95. This court need not consider whether *Bennett* renders § 9545(b)(ii) inadequate because it is inapplicable to Paddy's petition.[8]

Section 9545(b) is an adequate state ground with respect to non-capital cases, including Paddy's petition. *See Peterson v. Brennan*, 196 Fed. Appx. 135, 142 (3d Cir. 2006); *U.S. ex rel. Lipchey v. Corbett*, at 2007 WL 2428662, at *7 (W.D. Pa. Aug. 22, 2007) ("[O]ther than in death cases . . . the state courts regularly and consistently have applied the PCRA statute of limitations so as to render it an 'adequate' state law ground."); *Clay v. Sobina*, 2007 WL 950384, at *9 n.3 (W.D. Pa. Mar. 26, 2007) ("[A]fter January 16, 1997, the State Courts consistently applied the PCRA statute of limitations in cases other than death cases . . . so as to render the PCRA statute of limitations an adequate state procedural rule for purposes of the procedural default doctrine."). The Court of Appeals has acknowledged that the PCRA time bar was not an adequate state

---

[8] Paddy never invoked the exception discussed in *Bennett*. As the Superior Court explained: "Appellant does not allege in his petition when he first learned of the supposedly after-acquired evidence. Moreover, appellant has not shown that he filed his petition within 60 days of first discovering this evidence. Finally, appellant does not demonstrate how he learned of this evidence." *Paddy*, No. 932 EDA 2005, slip op. at 5.

In his federal habeas petition, Paddy also argued that he did not have proper notice of whether the PCRA court would apply the "relaxed waiver rule" to allow review of his petition even if it was untimely. Judge Rueter rejected this claim because the relaxed waiver rule never applied to non-capital cases such as Paddy's. R&R at 52-54; *see Yarris*, 230 F. Supp. 2d at 585 (discussing the "practice in death penalty cases of allowing merits review for claims barred by the PCRA time-bar"). Paddy does not object to this conclusion.

ground for capital cases prior to 1998, *see Lark v. Secretary of Pa. Dept. of Corrections*, 645 F.3d 596, 613 (3d Cir. 2011); *Banks v. Horn*, 126 F.3d 206 (3d Cir. 1997), but Paddy is not challenging a capital sentence in this habeas petition.[9]

The PCRA time bar is an adequate and independent state ground barring federal review. The following claims were contained only in Paddy's second PCRA petition:

1) The Commonwealth suppressed exculpatory evidence by failing to compare fingerprints recovered from the Volvo with those of the decedent and to test the Volvo for the presence of decedent's blood;

2) The Commonwealth suppressed the true extent of criminal charges pending against Roussaw and the complete benefits Roussaw received for testifying; and

3) The Commonwealth suppressed Blount's statement.

Petr's Second PCRA Br. at 95-97. These claims are procedurally defaulted.

### C. No Exceptions Excuse Paddy's Procedural Defaults

The procedural default bar can be overcome only if Paddy can establish cause and prejudice or demonstrate that a fundamental miscarriage of justice will occur if there is no federal review of his claims. *Wainwright v. Sykes*, 433 U.S. 72 (1977). A petitioner who makes the requisite showing for either exception is entitled to have his or her claims heard on their merits by the federal district court despite procedural defaults.

---

[9] Paddy is challenging a capital sentence in another habeas petition related to another murder for which he was convicted.

### 1. *Cause and Prejudice*

 "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner can establish cause "by showing, for example, that the factual or legal basis for a claim was not reasonably available to counsel or that government interference made compliance with the procedural rule impracticable." *Johnson v. Pinchak*, 392 F.3d 551, 563 (3d Cir. 2004).

Paddy asserts the Commonwealth committed numerous *Brady* violations constituting cause to excuse any procedural defaults. To succeed with this claim, Paddy would have to show that: 1) the Commonwealth actually violated *Brady*; and 2) those violations made it impracticable for Paddy to comply with the PCRA time bar. As explained in the next section, the Commonwealth did not commit any actionable *Brady* errors. Accordingly, Paddy has not shown cause to excuse his procedural defaults.

### 2. *Miscarriage of Justice*

Under *Schlup v. Delo*, 513 U.S. 298, 324 (1995), a petitioner asserting a claim of actual innocence under the miscarriage of justice exception must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." The petitioner must show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Paddy does not present any new evidence to support his claim of actual innocence. He asserts that the evidence supposedly suppressed by the Commonwealth would demonstrate his

innocence, Petr's Objections to R&R at 33, but he has not shown that "more likely than not any reasonable juror would have reasonable doubt" as to his guilt, *House v. Bell*, 547 U.S. 518, 538 (2006). Paddy has not satisfied the requirements of *Schlup*.

Paddy's objections with respect to the procedurally defaulted claims are overruled. The court will not review any of the procedurally defaulted claims; all such claims are dismissed with prejudice.

## II. Claims Regarding *Brady* Violations Not Procedurally Defaulted

Under AEDPA, a district court may grant a habeas corpus petition only if the state court's decision was: 1) contrary to or an objectively unreasonable application of clearly established United States Supreme Court precedent; or 2) an unreasonable determination of the facts based on the evidence in the state court. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is contrary to established precedent if it "applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002). A decision constitutes an unreasonable application of law when the state court "applied [the law] to the facts of [the] case in an objectively unreasonable manner." *Cone v. Bell*, 535 U.S. 685, 699 (2002). The federal habeas court must not reexamine the petitioner's state conviction; it is limited to determining whether a conviction violated the Constitution, laws, or treaties fo the United States. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Paddy asserted to the state courts, and now asserts in his federal habeas petition, that the Commonwealth committed numerous *Brady* violations. The state courts denied all of Paddy's

*Brady* claims. Judge Rueter, finding that the state courts did not act unreasonably or contrary to precedent, recommended this court deny Paddy's *Brady* claims as well. Paddy objects to Judge Rueter's recommendation on each *Brady* claim.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1983), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Under *Brady*, the prosecutor must disclose all exculpatory evidence to the defense before trial, even if the defendant did not specifically request the evidence. *United States v. Agurs*, 427 U.S. 97, 107 (1976). The defendant must demonstrate that there is a reasonable probability that the result of the trial would have been different if the evidence had been disclosed. *Strickler v. Greene,* 527 U.S. 263, 289 (1999). A reasonable probability is shown when the government's suppression undermines confidence in the outcome of the trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

### 1. Credibility of Witness Neal

Paddy asserts that the Commonwealth suppressed evidence of witness Neal's criminal activities as well as details of the benefits Neal received in exchange for his testimony. Neal testified that Paddy admitted to him that he shot Thomas. NT 5/12/94, at 99-100. According to Paddy, the Commonwealth withheld evidence of Neal's: 1) involvement with another murder; 2) potential federal sentence; and 3) conversation with Blount at which an associate, Steve Cross,

was present.[10] Petr's Objections to R&R at 47-48. Paddy also claims the Commonwealth failed to correct Neal's false and misleading testimony. *Id.*

Paddy raised these claims in his PCRA petition, and the Court of Common Pleas rejected them. The Superior Court affirmed the denial because "the nondisclosed information about Neal's criminal history and the potential charges against [Paddy] were readily available and could have been obtained by Appellant through the exercise of due diligence." *Paddy*, No. 2533 EDA 2001, slip op. at 10-11. The court also determined that Paddy failed to show that the evidence was material: "Since the jury convicted Appellant despite being informed about Neal's criminal background, it is improbable that the jury verdict would have been different had the jury been given the additional information about Neal's criminal background." *Id.*

The state court's conclusions were not unreasonable. A *Brady* violation does not occur where information was readily available to the defendant through the exercise of due diligence. *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991). Paddy noted in his first PCRA petition to the Superior Court that defense counsel could have obtained additional information relating to Neal's criminal background and the federal sentence he faced through the exercise of due diligence.[11] Petr's PCRA Appeal Br. at 41. Paddy also failed to demonstrate the materiality of this evidence.

---

[10] Paddy argues that the Commonwealth failed to reveal that Steve Cross was present during a conversation in which Neal claimed Blount told him he was going to have Paddy kill Thomas. Petr's Objections to R&R at 48. Paddy claims that "[t]he import of this evidence is that Cross, who worked for Neal in the drug business, owned a Volvo similar to that used in the killing of Thomas." *Id.*

[11] The Superior Court did not directly respond to Paddy's argument regarding Steve Cross, but its determination that the evidence relating to Neal was "readily ascertainable" to the defense also applies to this claim. Paddy's lawyer knew of Cross, his involvement with Neal, and that he owned a Volvo similar to Paddy's. Neal testified about his conversation with Blount, and defense counsel did not ask Neal who else was present during the conversation. N.T., 5/12/94, at 100. No *Brady* violation occurred with respect to this evidence.

## *2. Fingerprint Test Results and Police Investigation*

Paddy claims the Commonwealth suppressed material, exculpatory evidence of: 1) a fingerprint analysis that revealed that Paddy's fingerprints were not found in the Volvo alleged to have been used in the crime; and 2) a police investigation into other potential suspects. Petr's Objections to R&R at 51-53. Paddy raised these claims in his first PCRA petition. On appeal from the PCRA court's denial of his petition, the Superior Court rejected this *Brady* claim on the basis of materiality. The court stated that, "[i]n view of the overwhelming evidence of Appellant's guilt, . . . it is highly unlikely and improbable that had the jury been informed of the absence of Appellant's fingerprint on the Volvo, the verdict would have been different."[12] *Paddy*, No. 2533 EDA 2001, slip op. at 12.

The Superior Court's conclusion was neither contrary to precedent nor unreasonable. The court considered the suppressed evidence in light of all the evidence and determined that it did not undermine confidence in the verdict.[13] This conclusion was reasonable given the substantial amount of evidence supporting the petitioner's conviction, which included the testimony of five eyewitnesses. *See Paddy*, No. 1348 Phila. 1995, slip op. at 2.

---

[12] The Superior Court also "seriously questioned" Paddy's claim that he first become aware of the fingerprint analysis results in 1999. *Paddy*, No. 2533 EDA 2001, slip op. at 11 n.5.The court noted that, in Paddy's brief on direct appeal filed April 3, 1995, he alleged that trial counsel neglected to present evidence that none of his fingerprints were found in the Volvo. *Id.*

[13] Paddy argues that the Superior Court "applied the wrong standard" for materiality when it stated that the evidence would not have changed the verdict. Petr's Objections to R&R at 51. The question with regard to materiality is "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. The trial court must determine whether the evidence "put the whole case in such a different light as to undermine confidence in the verdict." *Id.* The Superior Court's conclusion that it "is highly unlikely and improbable that . . . the verdict would have been different" is synonymous with a decision that the evidence would not have undermined confidence in the verdict.

### 3. *Protective Order and Statements of Witness Harris*

Paddy argues that the Commonwealth withheld the identity and statements of witness Harris pursuant to a protective order. Petr's Objections to R&R at 53-55. Paddy states that Harris's eyewitness testimony could have been used to impeach Smith, the Commonwealth's main identifying witness. Petr's Mem. of Law at 73-74.

The Superior Court decided this claim on appeal from the PCRA court's dismissal of Paddy's first PCRA petition. It stated that Paddy had not "met the first component of the *Brady* test because the Commonwealth withheld Harris' identity and statements pursuant to a valid protective order." *Paddy*, No. 2533 EDA 2001, slip op. at 8-9. The court further explained that, even if one assumed arguendo that the Commonwealth withheld information beyond the scope of the protective order, Paddy had "failed to establish that the evidence withheld (whether exculpatory or impeachment) was favorable to him." *Id.*

The state court's determination was not contrary to precedent or unreasonable. The Commonwealth does not violate *Brady* when it does not reveal information subject to a valid protective order. Paddy also has not shown that the evidence is either exculpatory or material. As the Superior Court noted, Harris's statement actually may have corroborated the testimony of other eyewitnesses presented by the Commonwealth.[14]

Paddy's objections are overruled. This court adopts Judge Rueter's recommendation that all of Paddy's *Brady* claims are denied.

---

[14] According to the Superior Court, "Harris told the police that on the date of the shooting, he saw two black men in a rust-colored Volvo riding down 26th Street toward Lehigh; that he ran into Smith (one of the Commonwealth's eyewitnesses) on Oakdale Street; that he heard gunshots; that he saw the shooter jump into the Volvo and drive away. Harris' account corroborates the testimony of the Commonwealth's eyewitnesses, Diana Nobles, Louis Butler, Carrie Irick, and Kelvin Smith." *Id.* at 8-9.

### III.    Claims Regarding Ineffective Assistance of Counsel

Paddy also puts forth numerous claims of ineffective assistance of counsel. A petitioner

claiming ineffective assistance of counsel must show that: 1) counsel performed deficiently; and

2) the deficient performance prejudiced the defendant. *See Strickland v. Washington*, 466 U.S.

668, 687 (1984). The petitioner must show that "counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687,

and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Id.* at 694; *see also McNeil v. Cuyler*, 782 F.2d 443,

451 (3d Cir. 1986) ("A different outcome must be not merely possible, but probable.").

Judicial scrutiny of counsel's performance must be "highly deferential." *Strickland*, 466

U.S. at 688-89. This review is "doubly deferential when it is conducted through the lens of federal

habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Strategic decisions made by counsel, as

long as they are made after a thorough investigation of the law and facts at issue, are virtually

unchallengeable. *Strickland*, 466 U.S. at 689-90 ("[A] fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight."). The court

must determine whether the defendant received a fair trial, not whether counsel could have chosen

a more appropriate course of action. *Marshall v. Hendricks*, 307 F.3d 36, 86, 91 (3d Cir. 2002).

To succeed with his ineffective assistance of counsel claims on federal habeas review, Paddy has

to show that the state courts applied *Strickland* in an objectively unreasonable manner. *Woodford

v. Visciotti,* 537 U.S. 19, 25 (2002).

Paddy asserted to the state courts, and now asserts in his federal habeas petition, that trial

counsel was ineffective because of various decisions he made during the guilt phase of trial. Petr's

Objections to R&R at 63-77. Paddy also claims appellate counsel was ineffective for failing to investigate trial counsel's deficient performance. *Id.* This court will review each of the claims that are not procedurally defaulted to determine whether the state courts acted unreasonably.

### 1. *Claims Relating to Inoperability of Paddy's Volvo*

Paddy argues that trial counsel was ineffective for failing to: 1) investigate and present photographs showing the inoperability of the Volvo impounded by the police; and 2) call mechanic John Beauford as a witness to testify to the Volvo's inoperability. Petr's Objections to R&R at 58-62. He also claims appellate counsel was ineffective for failing to investigate and raise these claims. *Id.*

The state courts denied these claims when they were raised in Paddy's first PCRA petition. The Court of Common Pleas, noting "it would be an interesting photograph that could demonstrate the operability or lack thereof of a motor vehicle," concluded that counsel was not ineffective for failing to request the photographs. *Paddy*, No. 0826, slip op. at 2-3. The court added that, "even if the photographs could demonstrate the [in]operability of the vehicle, the murder occurred on July 17, 1989 and the vehicle was not towed from [Paddy's] girlfriend's house until July 19, 1989," so the pictures "would not be relevant to the vehicle's operability two or more days before." *Id.*

The court also determined that counsel made a reasonable strategic decision in not calling Beauford as a witness. Beauford's affidavit suggests that his testimony would have contradicted the testimony of numerous eyewitnesses that "place[d] [Paddy] at the scene and fleeing in the Volvo." *Id.* The Court of Common Pleas noted that "defense counsel decided not to insult the jury's intelligence with Beauford's testimony but rather to argue that they were mistaken as to

their identification of defendant. This strategy although unsuccessful certainly had a reasonable basis." *Id.* Finally, since trial counsel was not ineffective, appellate counsel could not be found ineffective for failing to cure trial counsel's errors. *Id.*

The state court did not apply *Strickland* to these IAC claims in an unreasonable manner. These claims are denied.

### 2. Failure to Object to Court's Curative Jury Instruction

Paddy claims that the prosecutor's closing argument was unfairly prejudicial to him, and that the trial court's "curative instructions were woefully inadequate, and, in fact, enhanced the error."[16] Petr's Objections to R&R at 74-75. He asserts that trial counsel was ineffective because he failed to seek "a *proper, effective* curative instruction." *Id.* at 75.

The Superior Court rejected this claim on direct appeal. The court determined that the trial court's instruction was correct because it "was given to make clear to the jury that there was no evidence that [Paddy] had made any threats against any of the Commonwealth's witnesses and that this evidence was to be considered only to explain why the witnesses did what they did." *Paddy*, No. 1348 Phila. 1995, slip op. at 9. This conclusion was not unreasonable or contrary to established law. As Judge Rueter recognized, trial counsel requested the curative instruction. R&R at 45. Paddy's lawyer also objected to the instruction and asked for a mistrial, which the

---

[16] The prosecutor apparently suggested in his closing argument that Paddy had threatened certain witnesses and that the witnesses were fearful of Paddy. The trial court gave the jury the following curative instruction:

> Ladies and gentlemen, on this occasion, and on some other occasions you have heard testimony from some witnesses about fear and about threats. That testimony is given only for you to to [sic] determine whether the witnesses have made different statements. It is not in any way attributed to the guilt of the defendant, to indicate any guilt on the part of the defendant. There is nothing to say that the threats were made by the defendant.

N.T., 5/12/94, at 426-27.

court denied. These actions do not suggest that counsel acted deficiently; to the contrary, Paddy's lawyer tried to help his client. This claim is denied.

### 3.  Failure to Object to and Eliciting Inadmissible Hearsay

Paddy asserts that trial counsel was ineffective for failing to object to and eliciting inadmissible hearsay.[17] Petr's Objections to R&R at 71-73. In denying this claim on direct appeal, the Superior Court described this move by counsel as "a trial strategy for which [counsel] cannot be deemed ineffective simply because in hindsight it was unsuccessful." *Paddy*, No. 1348 Phila. 1995, slip op. at 9. This conclusion was neither unreasonable nor contrary to precedent. Paddy did not show that his lawyer's actions undermined his right to a fair trial, and the state court properly gave deference to trial counsel's strategic decision. *Strickland*, 466 U.S. at 689-90. This claim is denied.

Paddy's objections are overruled. This court adopts Judge Rueter's recommendation that all of Paddy's ineffective claims be denied.

## IV.  Evidentiary Hearing

Paddy asserts he is entitled to an evidentiary hearing "to the extent that the claims presented in Petitioner's habeas petition involve any disputed issues of material facts." Petr's Objections to R&R at 38.

AEDPA permits evidentiary hearings on habeas review only in limited circumstances. 28 U.S.C. § 2254(e). A district court is permitted to hold an evidentiary hearing on a claim asserted

---

[17] Judge Rueter included this IAC claim in the unexhausted claims discussed above, but the claim was exhausted. In Paddy's brief to the Superior Court on direct appeal, Paddy argued that trial counsel was ineffective for failing "to object to inadmissible hearsay and elicited hearsay that was detrimental to the defense." Petr's Direct Appeal Br. at 40. Paddy made this same argument in his petition for allowance to appeal to the Pennsylvania Supreme Court. *See* Pet. for Allowance of Appeal.

in a habeas petition so long as such a hearing is not barred by 28 U.S.C. § 2254(e)(2). Section

2254(e)(2) bars the court from holding an evidentiary hearing unless the petitioner was diligent in

developing a factual basis for his claim in the state court proceedings, *Williams*, 529 U.S. at 430;

*Wilson v. Beard*, 426 F.3d 653, 665 (3d Cir. 2005), or the petitioner satisfied the criteria set out in

§ 2254(e)(2)(A)-(B).[1] When the applicant is not barred from obtaining an evidentiary hearing by

§ 2254(e)(2), the decision whether to grant a hearing rests in the discretion of the district court.

*Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Palmer v. Hendricks*, 592 F.3d 386, 392-94 (3d

Cir. 2010).

Paddy has not provided the court with any specific or particularized factual allegations

leading the court to grant an evidentiary hearing. Paddy's request for an evidentiary hearing is

denied.

## CONCLUSION

None of Paddy's claims, taken individually or cumulatively, entitles him to federal habeas

relief. Paddy's objections to the R&R are overruled and his habeas corpus petition is denied. An

appropriate order follows.

---

[1] Section 2254(e)(2) provides that:
　　(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall
　　not hold an evidentiary hearing on the claim unless the applicant shows that—
　　　　(A) the claim relies on—
　　　　　　(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme
　　　　　　　　Court, that was previously unavailable; or
　　　　　　(ii) a factual predicate that could not have been previously discovered through the exercise of due
　　　　　　　　diligence; and
　　　　(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but
　　　　　　for constitutional error, no reasonable factfinder would have found the applicant guilty of the
　　　　　　underlying offense.
28 U.S.C. § 2254(e)(2).